IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EMBARCADERO TECHNOLOGIES, INC., and IDERA, INC., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:17-cv-444-RP |
| REDGATE SOFTWARE, INC., REDGATE SOFTWARE, LTD., DAVID FRIGNOCA, and DUSTIN ABNEY, | § § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court are the partial motion to dismiss for failure to state a claim by Defendant Redgate Software, Inc., (Dkt. 42), the partial motion to dismiss for failure to state a claim by Defendant David Frignoca, (Dkt. 44), and the motion to dismiss for lack of personal jurisdiction by Defendant Redgate Software, Ltd., (Dkt. 43). After reviewing the pleadings, briefs, and relevant law, the Court **GRANTS** all three motions.

## BACKGROUND

On May 11, 2017, Plaintiffs brought an action in this Court against four defendants, alleging eight claims. (Pls.' Orig. Compl., Dkt. 1). The claims arose from the departure of four employees of Embarcadero,[1] David Frignoca ("Frignoca"), Dustin Abney ("Abney") and two others, each of whom left Embarcadero and joined the same company. That company, Redgate, Ltd., is incorporated in the United Kingdom and has a subsidiary called Redgate, Inc., (together, "the Redgate Defendants"), which is incorporated in California. Plaintiffs brought suit against Frignoca, Abney, Redgate Ltd., and Redgate Inc., alleging the following claims: (1) breach of contract

---

[1] Embarcadero was acquired by Idera in 2015. Defendants Frignoca and Abney worked for Embarcadero before the acquisition. After Idera acquired Embarcadero, Frignoca and Abney continued to sell what are referred to as Embarcadero legacy products—products that Embarcadero sold before the acquisition.

1

(Frignoca); (2) breach of fiduciary duty (Frignoca); (3) aiding and abetting breach of fiduciary duty (the Redgate Defendants); (4) misappropriation of trade secrets in violation of the Federal Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq.* (Frignoca and the Redgate Defendants); (5) misappropriation of trade secrets in violation of the Texas Uniform Trade Secrets Act ("TUTSA"), TEX. CIV. PRAC. & REM. CODE § 134A.001, *et seq.* (Frignoca and the Redgate Defendants); (6) violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* (Frignoca); (7) violation of the Texas Harmful Access by Computer Act ("HACA"), TEX. CIV. PRAC & REM. CODE § 143.001, *et seq.* (Frignoca); and (8) breach of contract (Abney). (Am. Compl., Dkt. 33, ¶¶ 32–69). Plaintiffs requested a preliminary injunction, which the Court denied following a two-day hearing. (Order, Dkt. 78). The Court deferred until a later date a decision on the pending motions to dismiss.[2] These motions are now before the Court.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." When evaluating a motion to dismiss under Rule 12(b)(6) the "district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

---

[2] Denying the application for a preliminary injunction on the grounds of failure to demonstrate irreparable harm, the Court did not reach the merits of the motions to dismiss for failure to state a claim and for lack of personal jurisdiction. "[W]hen the [personal] jurisdictional question is complex or difficult, a court simply may avoid the issue by resolving the suit on the merits when they clearly must be decided in favor of the party challenging jurisdiction, thereby obviating any need to decide the question; that approach is possible even when the jurisdictional issue lacks complexity." CHARLES ALAN WRIGHT ET AL., 4 FEDERAL PRACTICE & PROCEDURE § 1067.6 (4th ed.); *see also id.* n.9 (collecting cases).

2

Similarly, in deciding a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the court must accept as true the plaintiff's "uncontroverted allegations, and resolve in its favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). "[T]he plaintiff bears the burden of establishing jurisdiction, but need only present *prima facie* evidence." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).

## DISCUSSION

Frignoca seeks to dismiss Plaintiffs' claims for breach of fiduciary duty and violation of the Texas Harmful Access by Computer Act; the Redgate Defendants seek dismissal of the claim against them for aiding and abetting a breach of fiduciary duty; Defendant Redgate, Ltd. also seeks to dismiss all claims against it, contending that the Court lacks personal jurisdiction to hear them. The Court addresses each motion in turn.

### I. TUTSA Preemption: Breach of Fiduciary Duty Claims

Frignoca seeks dismissal of the claims against him for breach of fiduciary duty and violation of HACA on the ground that both claims are preempted by TUTSA.[3] The Redgate Defendants contend, along the same lines, that the aiding and abetting claim against them derived from the breach of fiduciary duty claim against Frignoca should be dismissed on preemption grounds, as well. TUTSA contains a preemption provision.

> (a) Except as provided by Subsection (b), this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.
>
> (b) This chapter does not affect:

---

[3] TUTSA was amended effective September 1, 2017. Because the bill amending the Act provided that the amendment "applies only to an action that commences on or after the effective date of this Act," and that an "action that commences before the effective date of this Act is governed by the law applicable to the action immediately before the effective date of this Act, and that law is continued in effect for that purpose," H.B. 1995, 85th Leg., Reg. Sess. (Tex. 2017), the Court applies the law as it existed prior to the law's effective date, since this action was filed on May 11, 2017. Additionally, H.B. 1995 did not amend Section 134A.007, the only provision relevant for this order. *Id.*

3

>    (1) contractual remedies, whether or not based upon misappropriation of a trade secret;
>    (2) other civil remedies that are not based upon misappropriation of a trade secret; or
>    (3) criminal remedies, whether or not based upon misappropriation of a trade secret.

TEX. CIV. PRAC. & REM. CODE § 134A.007.

The parties' dispute centers on the meaning of "based upon misappropriation of a trade secret" in subsection (b)(2). Frignoca and the Redgate Defendants argue that the breach of fiduciary duty claim is preempted by TUTSA because it is based on the same underlying facts as Plaintiffs' TUTSA claim—the improper taking of confidential business information—and is therefore "based upon misappropriation of a trade secret." Plaintiffs contend that a breach of fiduciary duty claim is not preempted by TUTSA when it alleges the improper taking of confidential information that does not qualify as a trade secret. The text of the statute itself does not provide much guidance in resolving the two competing interpretations—"based upon misappropriation of a trade secret" is ambiguous enough to support either. There is also little case law from Texas courts applying the statute's preemption provision. However, a recent state appellate court case provides some guidance. *See Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 843 (Tex. App. 2017—Corpus Christi, no pet. h.) (holding that a breach of fiduciary duty claim was preempted by TUTSA when its factual underpinnings could not have been present without alleged trade secrets). It also looked favorably upon the practice of seeking guidance from the interpretations of other courts applying versions of the Uniform Trade Secrets Act's preemption provisions adopted in other states. *Id.* ("There are few Texas cases analyzing the Texas Uniform Trade Secrets Act's preemption provision, but other cases analyzing similar provisions of the applicable Uniform Trade Secrets Acts are instructive.").

*Super Starr* aids the Court in its duty to make an educated guess about how the Texas Supreme Court would rule on the issue of whether a breach of fiduciary duty claim alleging only the

4

misappropriation of confidential information is preempted by TUTSA. *See Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 353 (5th Cir. 1989) ("A federal court exercising pendent jurisdiction over state law claims must apply the substantive law of the state in which it sits."); *Webb v. City of Dall.*, 314 F.3d 787, 795 (5th Cir. 2002) (stating that in cases applying state law, federal courts may look to intermediate state appellate courts for guidance on questions of law not decided by the state Supreme Court). The *Super Starr* court found that a breach of fiduciary duty claim was preempted by TUTSA because it "duplicate[d] its alleged violation of the Texas Uniform Trade Secrets Act." 531 S.W.3d at 843. There, the fiduciary duty breach claim was based upon diverting accounts and business and soliciting accounts and employees through the use of confidential and proprietary information; the court found that such actions could not have been done "without the use of alleged trade secrets." *Id.* This supports Defendants' position that a breach of fiduciary duty claim based on the same facts as a TUTSA claim is preempted by TUTSA. However, the court did not conclusively preclude Plaintiffs' position that a breach of fiduciary duty claim based on confidential information is not preempted by TUTSA because the holding was premised on the finding that alleged trade secrets (not merely confidential information) were a necessary component of the facts supporting the breach of fiduciary duty claim.

After reviewing the reasoning in *Super Starr* and that of various other courts across the country applying Uniform Trade Secrets Act preemption, the Court finds that TUTSA's preemption provision encompasses all claims based on the alleged improper taking of confidential business information. Without more, a breach of fiduciary duty claim cannot proceed. The underlying purpose of the TUTSA preemption provision is, as many courts have noted, to "prevent inconsistent theories of relief for the same underlying harm by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret." *Id.* (quoting *Smithfield Ham & Prod. Co. v. Portion Pac, Inc.*, 905 F. Supp. 346, 348 (E.D. Va. 1995)). To narrow the

preemption's application exclusively to information that qualifies as a trade secret under the statute would frustrate this purpose. Plaintiffs would like to have a TUTSA claim for all of their information taken by Frignoca that qualifies as a trade secret and a fiduciary duty claim for all of the information taken by Frignoca that does not qualify as a trade secret. But both claims stem from the same underlying harm—the taking of Plaintiffs' confidential information. To allow multiple theories of relief for this same underlying harm would be to read the preemption provision too narrowly. Accordingly, the Court finds that TUTSA's preemption clause applies to a breach of fiduciary duty claim that is based solely upon taking confidential information.

The Court is by no means the first to come to this conclusion. "Most courts considering this question have determined UTSA was intended to preempt all claims based upon the unauthorized use of information." *360 Mortgage Group, LLC v. Homebridge Financial Servs., Inc.*, No. A-14-CA-847-SS, 2016 WL 900577, at *8 (W.D. Tex. March 2, 2016); *see also New South Equipment Mats, LLC v. Keener*, 989 F. Supp. 2d 522, 534 (S.D. Miss. 2013) ("Most of the courts that have considered this issue hold that UTSA preemption extends to claims for the misappropriation of confidential or proprietary information that does not qualify as trade secrets."); *Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011) ("[T]he Court concludes that UTSA supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret."); *Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005) ("Because all claims stemming from the same acts as the alleged misappropriation are intended to be displaced, a claim can be displaced even if the information at issue is not a trade secret. Thus, a determination of whether the information at issue constitutes a trade secret under the DUTSA need not be addressed prior to making a determination of displacement."); *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 948–49 (W.D. Mich. 2003) ("[T]he Court concludes that the disputed status of information as a trade secret

6

does not preclude a court from determining whether a claim or claims are displaced by the MUTSA."). This has been referred to by legal scholars in the field as the "majority approach." *See* Richard F. Dole, Jr., *Preemption of Other State Law by the Uniform Trade Secrets Act*, 17 SMU Sci. & Tech. L. Rev. 95, 109 (2014) ("The majority approach preempts noncontractual legal claims protecting business information, whether or not the business information is a Uniform Act trade secret.").

A federal court in this district has also adopted this reasoning. In *360 Mortgage Group*, the court found that claims for conversion, unjust enrichment, and a constructive trust were preempted by TUTSA on the ground that they were based on the same underlying harm—taking confidential information. *360 Mortgage Grp.*, 2016 WL 900577 at *7–8. While the *360 Mortgage* court found that a breach of fiduciary duty claim was not preempted by TUTSA, it did so because there were "facts unrelated to Plaintiff's misappropriation claim which could support Plaintiff's breach of fiduciary claim." *Id.* at *7. The court pointed to other evidence unrelated to the taking of confidential information to support a claim for breach of fiduciary duty, including continuing to work for an employer for a month after violating an agreement, deletion of potentially incriminating emails, and submission of a false declaration to the court stating that the employee delivered a formal resignation letter. *Id.* The court concluded that "[b]ecause the claim is based on facts unrelated to those which form the basis of the trade secret misappropriation claim, Plaintiff's breach of fiduciary duty claim is not preempted." *Id.*

Plaintiffs disagree with the majority approach: "Where recovery does not depend upon a showing that the misappropriated information was protected as a trade secret, the claim is not duplicative of a TUTSA claim and is not preempted." (Pls.' Resp., Dkt. 49, at 4). Plaintiffs would like for TUTSA to permit them a cause of action for every piece of information claimed to be improperly taken by Frignoca, whether or not it satisfies the statutory elements of a trade secret.

This reading has been adopted by at least one federal district court in Texas. *See AMID, Inc. v. Medic Alert Foundation U.S., Inc.*, 241 F. Supp. 3d 788, 826–27 (S.D. Tex. 2017) (finding an unfair competition claim based on confidential information not preempted by TUTSA). But given the purpose behind TUTSA's preemption provision and the number of cases across the country applying Uniform Trade Secrets Act preemption and finding to the contrary, the Court finds that a breach of fiduciary claim based only on the improper taking of confidential information is preempted by TUTSA.

Here, Plaintiffs' sole basis for their breach of fiduciary duty claim is the misappropriation of confidential business information. Plaintiffs state in their amended complaint that their breach of fiduciary duty claim is expressly based upon the misappropriation of trade secrets. (*See* Pls.' Am. Compl., Dkt. 33, ¶ 38 ("Frignoca breached these fiduciary duties by accessing Plaintiffs' valuable confidential and proprietary information and trade secrets for activities that were disloyal to, and harmful to, the interests of Plaintiffs. Frignoca took and used Plaintiffs' confidential and proprietary information and trade secrets both during and after his employment with Plaintiffs for the benefit of his new employer.")). Indeed, this language is strikingly similar to the wording of the claim for breach of fiduciary duty found preempted by TUTSA in *Super Starr*, which alleged the diversion of accounts and business "by using confidential and proprietary information owned by [the defendant] against the interests of [the defendant]." 531 S.W.3d at 843. Plaintiffs allege no other factual basis for the breach of fiduciary duty claim. The fact that some of the confidential information taken may not fit the statutory definition of trade secret does not change the outcome.

Because Plaintiffs have not pleaded any facts unrelated to misappropriation of confidential information to support their claim for breach of fiduciary duty, the claim is preempted by TUTSA. Because the claim against the Redgate Defendants for aiding and abetting a breach of fiduciary duty is derivative of the breach of fiduciary duty claim against Frignoca, it too must be dismissed. *See*

8

*Super Starr*, 531 S.W.3d at 847 ("Generally, when a breach of fiduciary duty claim fails, so should an aiding and abetting in the breach of fiduciary duty claim, to the extent one exists in Texas.").

## II. TUTSA Preemption: HACA

Plaintiffs' HACA claim also appears to be based upon the same facts as their misappropriation of trade secrets claims. Plaintiffs allege that Frignoca "appropriated electronically-stored files owned by Plaintiffs, including Plaintiffs' computerized customer 'data' and used Plaintiffs' office computer(s) to receive or use data and other property owned by Plaintiffs that were not intended for public dissemination." (Am. Compl., Dkt. 33, ¶ 63). Plaintiffs have not pleaded that this data is any different from the confidential information referred to in the TUTSA and breach of fiduciary duty claims. Because the claim is entirely based on the alleged taking of confidential business information, it is also preempted by TUTSA.

## III. Personal Jurisdiction: Redgate, Ltd.

United Kingdom-based Redgate, Ltd. has moved to dismiss all claims against it for lack of personal jurisdiction. (Dkt. 43). Plaintiffs bring three claims against Redgate, Ltd: (1) aiding and abetting Frignoca's alleged breach of fiduciary duty; (2) misappropriation of trade secrets in violation of federal law; and (3) misappropriation of trade secrets in violation of Texas law. (Am. Compl., Dkt. 33, ¶¶ 40–56). Because the breach of fiduciary duty claim has been disposed of for failure to state a claim, the remaining claims against Redgate, Ltd. are for misappropriation of Plaintiffs' trade secrets. *See Seiferth v. Helicopteros Autneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) (stating that personal jurisdiction is a claim-specific inquiry, which means that plaintiffs must establish personal jurisdiction with respect to each claim). Plaintiffs put forth two arguments in response to the motion to dismiss: (1) the Court should deem personal jurisdiction proper over Redgate, Ltd.; or (2) in the alternative, the Court should give Plaintiffs the opportunity to conduct jurisdictional discovery. The Court addresses each in turn.

## A.     *Prima Facie* Case for Personal Jurisdiction

To move forward in a case against a defendant challenging personal jurisdiction, a plaintiff need only make out a *prima facie* case for personal jurisdiction when the issue is "ruled on motion prior to trial and without a full evidentiary hearing." *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831 (5th Cir. 1986). If a full evidentiary hearing is not held, "the allegations of the complaint are taken as true except as controverted by the defendant's affidavits and conflicts in the affidavits are resolved in the plaintiff's favor." *Id.* It is still the ultimate burden of the plaintiff to show jurisdiction by a preponderance of the evidence, which is often "resolved at trial along with the merits." *Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). If a court does conduct a pretrial evidentiary hearing "confined to the jurisdictional issue, where both sides have the opportunity to present their cases fully, the district court can decide whether the plaintiff has established jurisdiction by a preponderance of the evidence." *Id.* at 241–42. The Court held a lengthy evidentiary hearing on October 20 and October 23, but the primary focus of that hearing was Plaintiffs' application for a preliminary injunction. The parties did not devote time to making arguments regarding the personal jurisdiction question. Because a hearing "confined to the jurisdictional issue," *Walk Haydel*, 517 F.3d at 241, has not been held, Plaintiffs only need to establish a *prima facie* case of personal jurisdiction to proceed with their claims against Redgate Ltd at this stage. They have failed to do so.

Federal courts have personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Personal jurisdiction must also comport with the Due Process clause of the Fourteenth Amendment. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012). Because the long-arm statute of Texas has been interpreted to extend as far as due process permits,

*Electrosource, Inc. v. Horizon Battery Technologies, Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999) (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990)), the Court need only consider the due process inquiry.

The due process requirements are twofold. The defendant must have purposefully availed itself of the "benefits and protections of the forum state by establishing 'minimum contacts' with the forum state," and exercising personal jurisdiction over the defendant must "not offend traditional notions of 'fair play and substantial justice.'" *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction can be either general or specific. General jurisdiction exists where "a defendant has continuous and systematic general business contacts with the forum state." *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010) (quotation marks omitted). Specific jurisdiction is proper when "(1) the nonresident defendant purposefully avails itself of the privileges of conducting activities in the forum state; and (2) the controversy arises out of or is related to the defendant's contacts with the forum state. *Id.* at 369 (citing *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)). Here, Plaintiffs have not contended that Redgate, Ltd. is subject to general jurisdiction. Rather, they maintain that personal jurisdiction should extend to Redgate, Ltd. because Frignoca was acting as its agent, and their claim against Redgate Ltd. arises out of his actions when acting under Redgate, Ltd.'s control. (Pls.' Jur. Resp., Dkt. 50, at 5–6).

"[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citation and quotation marks omitted). Plaintiffs have alleged that Redgate, Ltd. "knowingly and actively participated in the breaches of fiduciary duty perpetrated by Frignoca by" (1) "inducing or encouraging Frignoca to take and use Plaintiffs' confidential information for

Redgate's benefit;" (2) "assisting Frignoca to siphon away from Plaintiffs certain key employees and confidential information;" and (3) "using Plaintiffs' confidential information to give itself an unlawful competitive advantage in the market as a proximate result of Frignoca's breach of fiduciary duty." (Am. Compl., Dkt. 33, ¶ 42). With respect to the trade secrets claims, Plaintiffs allege that Redgate, Ltd. participated in Frignoca's misappropriation by "aiding and abetting Frignoca in the misappropriation of Plaintiffs' trade secrets" and also "used improper means to acquire knowledge of the trade secrets by aiding and abetting Frignoca in his material breach of his obligation to maintain the secrecy of the trade secrets." (*Id.* ¶ 47).

### 1. Aiding and Abetting

The argument regarding aiding and abetting the breach of fiduciary claim has been disposed of by the 12(b)(6) motions to dismiss for failure to state a claim. However, even if that claim were viable, it would not be sufficient to establish personal jurisdiction. *See Delta Brands Inc. v. Danieli Corp.*, 99 Fed App'x 1, 6 (5th Cir. 2004) ("To establish its prima facie case of specific personal jurisdiction, [the plaintiff] was required to demonstrate that [the defendant] individually, and not as part of the conspiracy, had minimum contacts with Texas.") (citing *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999)); *see also Guidry*, 188 F.3d at 625 (reversing the district court's ruling, which failed to "determine whether the plaintiffs had made a prima facie case of specific personal jurisdiction over each tobacco trade association defendant based on a tort committed in the state, individually and not as part of a conspiracy, by each particular defendant"). Plaintiffs' claim that Redgate, Ltd. contacted Frignoca for the purpose of recruiting him does not support specific jurisdiction because the aiding and abetting claim does not stem from the recruitment of Frignoca; it arises only from the misappropriation of Plaintiffs' trade secrets and solicitation of Plaintiffs' employees. (Am. Compl., Dkt. 33, ¶ 42 (stating that aiding and abetting claim stems only from assistance in Frignoca's taking Plaintiffs' confidential information and soliciting its employees)).

## 2. Misappropriation

The remaining two claims against Redgate, Ltd. both involve misappropriation of Plaintiffs' trade secrets. Plaintiffs explain in their response to Redgate, Ltd.'s motion to dismiss for want of personal jurisdiction that the grounds supporting the exercise of personal jurisdiction over Redgate, Ltd. for the misappropriation claims depend upon an agency theory: Frignoca was acting in a capacity as Redgate, Ltd.'s agent when misappropriating Plaintiffs' trade secrets. (Pls.' Jur. Resp., Dkt. 50, at 5). Plaintiffs' case for specific jurisdiction over Redgate, Ltd. by virtue of its agency relationship with Frignoca can be summarized as follows: (1) Redgate misappropriated Plaintiffs' trade secrets and "primarily did so through its Director and Senior Sales Vice President, Frignoca, who appears to reside in Austin, Texas, and who likely committed or caused to be committed the acts of misappropriation in Austin, Texas," (*id.* at 6); and (2) "Frignoca's contacts with Texas may be attributed to Redgate because he is an agent of Redgate," (*id.*). Plaintiffs have failed to establish a *prima facie* case for jurisdiction via an agency theory.

Plaintiffs are correct to note that "the actions of an agent may establish minimum contacts over a principal." *McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009). However, an agency relationship must be shown to exist to support personal jurisdiction. The *McFadin* court found no agency relationship to exist with respect to one defendant but that one did exist for another defendant. *Id.* ("While the actions of an agent may establish minimum contacts over a principal, we agree with the district court that the relationship between Brockman and Grenemyer will not sustain attribution to Grenemyer of his actions in Texas."); *see also id.* at 763 (finding that another defendant's direction of Brockman's sales was sufficient to establish an agency relationship for the purposes of specific jurisdiction).

*McFadin* is a helpful case for determining whether sufficient minimum contacts have been established via an agency relationship because it found that one defendant's relationship was not an

agency relationship with the in-state person, while another defendant's relationship with the same person was a principal-agent relationship. Three defendants in the case who were Colorado residents—Connie Grenemyer and Lynn and William Gerber—challenged the court's personal jurisdiction over them. *Id.* at 756. The plaintiff's asserted basis for personal jurisdiction was that the actions of a third party, one Jason Brockman, who sold merchandise in Texas on behalf of Grenemyer and the Gerbers, could be imputed to the defendants by virtue of an agency relationship. *Id.* at 758. The court found no personal jurisdiction over Grenemyer, whose relationship with Brockman consisted of only a revenue sharing agreement and a loan of samples for display, because "Grenemyer did not direct Brockman to sell bags in Texas. Such conduct is insufficient to establish a relevant agency relationship." *Id.* at 761–62. The court did find personal jurisdiction over the Gerbers, who "sufficiently directed the sale of their handbags to Texas such that they could reasonably anticipate being haled into court there," *id.* at 763, by virtue of hiring Brockman to sell the bags in Texas, contributing to the costs of his sales booth, and agreeing to pay him a commission on sales, after which Brockman "did in fact sell bags to buyers" in Texas. *Id.*

To determine whether an agency relationship existed, the *McFadin* court examined whether the plaintiff presented sufficient evidence demonstrating the principal has the authority both (1) "to assign the agent's task" and (2) "to control the means and details of the process by which the agent will accomplish that task." *Id.* at 762 n.25 (quoting *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008)). Here, it is not disputed that Frignoca currently serves as an employee of Redgate, Ltd. They have likely engaged in a principal-agent relationship. However, Frignoca's current status as an agent of Redgate, Ltd. is not sufficient to confer personal jurisdiction. What matters is whether he was acting as Redgate, Ltd.'s agent at the time of the relevant conduct. Apart from generally asserting that an agency relationship existed between Redgate, Ltd. and Frignoca at the time he is said to have misappropriated trade secrets, Plaintiffs have alleged no specific facts

regarding the agency relationship. They have not asserted that Redgate, Ltd. assigned Frignoca's tasks or controlled the process by which he accomplished tasks when he purportedly misappropriated Plaintiffs' trade secrets. They have not even laid out the elements of an agency relationship. Rather, Plaintiffs state merely that their "claims for aiding and abetting and misappropriation relate to actions Frignoca took or caused to be taken in Texas as an agent of Redgate." (Pls.' Jur. Resp., Dkt. 50, at 6). Without more, this bare assertion cannot be said to have satisfied the requirement for a *prima facie* case of personal jurisdiction over Redgate, Ltd. Even when "accept[ing] as true the nonmover's allegations and resolv[ing] all factual disputes in its favor," *Guidry*, 188 F.3d at 625 (5th Cir. 1999), Plaintiffs have not met their burden.

**B.      Jurisdictional Discovery**

Plaintiffs spent a significant portion of their response to Redgate, Ltd.'s motion to dismiss for lack of personal jurisdiction explaining why they should be permitted to engage in jurisdictional discovery. This was not the correct procedure to request jurisdictional discovery.[4] That procedural misstep aside, even if Plaintiffs had properly requested jurisdictional discovery, they would not be so entitled because they have failed to make out a *prima facie* case for the existence of personal jurisdiction over Redgate, Ltd.

Jurisdictional discovery need not be granted when discovery will not add any facts that will affect the analysis. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014) (affirming the district court's decision to deny jurisdictional discovery when the plaintiff failed to make a *prima facie* showing of personal jurisdiction and further discovery would not add any "significant facts")

---

[4] For one thing, filing a motion within a brief responding to a motion to dismiss is not permitted pursuant to the administrative policies and procedures of the Western District of Texas. Rule 3(g) of those policies and procedures prohibits the filing of a motion and a response to another motion in the same filing. Additionally, the appropriate way to request jurisdictional discovery would be through motion, not through a responsive brief to a motion filed by another party. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); *see also Grosvenor v. Qwest Corp.*, 733 F.3d 990, 997 (10th Cir. 2013) ("Arguments asserted in response to a motion are generally not considered requests for an order.").

(citing *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000)). In addition to their failure to make out a *prima facie* case for personal jurisdiction over Redgate, Ltd., Plaintiffs have not explained what form their proposed jurisdictional discovery would take, nor have they explained what facts they expect to find in order to help them establish personal jurisdiction over Redgate, Ltd. Plaintiffs merely assert that, with the benefit of discovery, they could "establish that Frignoca, in fact, continues to live and work in Texas and that [Plaintiffs'] claims for aiding and abetting and misappropriation relate to actions Frignoca took or caused to be taken in Texas as an agent of Redgate." (Pls.' Jur. Resp., Dkt. 50, at 6). This conclusory assertion is not sufficient to make out a *prima facie* showing of personal jurisdiction. Plaintiffs have not explained why Frignoca's alleged continued residence in Texas is relevant to the agency theory they have put forth or why discovery obtained tending to show such continued residence would confer jurisdiction on the Court. Moreover, they seek discovery to establish that Plaintiffs' "claims for aiding and abetting and misappropriation relate to actions Frignoca took or caused to be taken in Texas as an agent of Redgate." (*Id.*). In addition to being a conclusory allegation ("as an agent of Redgate"), the assertion does not sufficiently allege minimum contacts that can be imputed to Redgate, Ltd.; the fact that aiding and abetting or misappropriation *relate to* actions taken by Frignoca is not sufficient to confer personal jurisdiction. Under the agency theory Plaintiffs have put forward, the actions allegedly taken by Frignoca acting as an agent of Redgate, Ltd. must have been the contacts under which jurisdiction is asserted. In short, Plaintiffs have given the Court no reason to believe that discovery would lead to any information tending to show that personal jurisdiction over Redgate, Ltd. in this case is proper.

## CONCLUSION

Redgate Software, Inc.'s partial motion to dismiss for failure to state a claim by Defendant Redgate Software, Inc., (Dkt. 42), is **GRANTED**. David Frignoca's partial motion to dismiss for

failure to state a claim, (Dkt. 44), is **GRANTED**. The motion to dismiss for lack of personal jurisdiction by Defendant Redgate Software, Ltd., (Dkt. 43), is **GRANTED**. Plaintiffs' claims against Redgate Software, Ltd., are **DISMISSED**. Plaintiffs' claims for breach of fiduciary duty and violation of the Texas Harmful Access by Computer Act are also **DISMISSED**.

**SIGNED** on January 4, 2018.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE